UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID F.,

          Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. C25-8-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. Plaintiff contends that the administrative law judge ("ALJ") erred by misevaluating his symptom testimony, the lay witness evidence, the medical opinion evidence, and moves for the Court to consider new evidence in this appeal. (Dkt. ## 12-13, 16.) The Commissioner filed responses arguing that the Court should not supplement the record, and that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. ## 20-21.) Plaintiff filed a reply. (Dkt. # 26.) Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court AFFIRMS the Commissioner's final decision and

ORDER - 1

DISMISSES the case with prejudice.[1] Plaintiff's motion to supplement the record (dkt. ## 12, 16) is DENIED.

## II.   BACKGROUND

Plaintiff was born in July 1974, has a high school education, and has worked as an auditor. AR at 30-31. Plaintiff was last gainfully employed in October 2018. *Id.* at 20.

In September 2019, Plaintiff applied for benefits, alleging disability as of October 22, 2018. AR at 192. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* After the ALJ conducted a hearing in February 2022, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 192. Plaintiff appealed the decision to the Appeals Council, which remanded the case back to the ALJ with instructions to consider relevant evidence that was erroneously excluded in the first hearing. *Id.* at 211. The ALJ conducted a second hearing in November 2023 and issued a new decision again finding Plaintiff not disabled. *Id.* at 18.

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, that Plaintiff had the severe impairments of generalized anxiety disorder, major depressive disorder, cannabis use disorder, autism spectrum disorder, and migraines. AR at 20. Plaintiff did not engage in substantial gainful activity from October 22, 2018, through his date last insured ("DLI") of December 31, 2023. *Id.* Plaintiff could perform a full range of work at all exertional levels but with some exertional and environmental limitations and limited to simple, routine tasks with occasional, superficial interaction with coworkers, occasional interaction with supervisors, and no interaction with the public. *Id.* at 23.

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 2.)

[2] 20 C.F.R. § 404.1520.

ORDER - 2

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 1.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings. *Id.*

Although the Court evaluates the record as a whole, it is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The ALJ is tasked with evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

ORDER - 3

## IV.   DISCUSSION

Plaintiff argues the ALJ erred in evaluating the medical evidence, his subjective symptom testimony, the lay witness testimony, and his age category, and requests that the court consider new medical opinion evidence. (Dkt. # 13.)

### A.   The ALJ Did Not Err in Evaluating Medical Evidence

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. § 404.1520c(a)-(c). These findings must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

#### 1.   Mariam Araujo, Ph.D.

Dr. Araujo examined Plaintiff in August 2019 and opined that he would need to receive flexibility from work regarding communication differences and would need explicit non-judgmental feedback from his employer. AR at 749-50. The ALJ considered Dr. Araujo's opinion and found it only partially persuasive as she did not provide a full functional assessment. *Id.* at 27. The ALJ incorporated this opinion by "accommodat[ing] for social limitations consistent with complaints and symptoms noted in the record" in the residual functional capacity ("RFC"). *Id.* at 27.

Plaintiff argues the ALJ "disregard[ed] the clearest most uncontested statement" of Dr. Araujo[3] that Plaintiff would have difficulty with changes in routine. (Dkt. # 13 at 3.) Plaintiff makes no argument that the ALJ misevaluated Dr. Araujo's opinion, nor does he explain how the RFC fails to incorporate this opinion. Thus, the ALJ did not err in discounting the opinion of Dr. Araujo.

---

[3] Plaintiff refers to the decision of Marian Arahuo, Ph.D., (*See* dkt. #13 at 3, 7), but it is clear from the citations he is referring to Dr. Araujo.

        2.      *Michael Friedman, D.O.*

Dr. Friedman examined Plaintiff and reviewed his medical record in July 2021. AR at 1239. He provided a summary of the medical evidence, Plaintiff's symptoms, and diagnosis. *Id.* at 1239-49. He opined that Plaintiff's impairments would make it difficult for him to return to his previous work, and that he would not be able to work under deadlines. *Id.* at 1248. The ALJ considered the opinion of Dr. Friedman and discounted it as it did not offer a functional assessment and used standards of a different agency to determine Plaintiff could not return to his prior work. *Id.* at 28-29. The ALJ nonetheless considered Dr. Friedman's analysis and exam findings and accommodated them in the RFC. *Id.*

Plaintiff argues the ALJ erred in discounting Dr. Friedman's opinion because reports for other agencies must still be considered, and she failed to account for Dr. Friedman's opinion that Plaintiff's symptoms would wax and wane. (Dkt. # 13 at 12, 15.) Plaintiff has not shown how the ALJ's RFC determination failed to account for the limitations opined by Dr. Friedman and does not address the ALJ's finding that Dr. Friedman did not offer a functional assessment. Accordingly, the ALJ did not err in discounting the opinion of Dr. Friedman.

        3.      *Brian Grant, M.D.*

Dr. Grant examined Plaintiff in October 2021 on referral after another agency noted conflict between the opinions of Drs. Arvidson and Friedman. AR at 1728. Dr. Grant opined that Plaintiff's work temporarily exacerbated his pre-existing conditions but leaving work had returned him to a functional baseline. *Id.* The ALJ considered the opinion of Dr. Grant and discounted it as inconsistent with the record because more restrictions than those opined to by Dr. Grant were appropriate. *Id.* at 29. While Plaintiff takes issue with the ALJ's assessment (dkt. # 13 at 12), he does not provide this Court with any argument of error in assessing the opinion or

ORDER - 5

how including greater limitations than those opined by Dr. Grant is harmful error. Accordingly, the ALJ did not err in assessing the opinion of Dr. Grant.

    4.  *Kevin Means, M.D.*

Dr. Means began treating Plaintiff in 2020 as his primary care physician and issued an opinion in February 2023. AR at 1372. He opined that Plaintiff's symptoms improved after leaving work and that Plaintiff "[would be] unable to work in any occupation for the indefinite future due to depression, anxiety, and autism disorders." *Id.* at 1373. The ALJ considered the opinion of Dr. Means and discounted it as "not well explained, lacks specificity in limitations, and does not provide a duration that would meet agency standards for disability as 'indefinite' is undefined by nature and could be a period of as little as a day." *Id.* at 30.

Plaintiff argues that "if the ALJ felt there was some imprecision he [sic] had to take steps to seek clarification." (Dkt. # 13 at 13.) This misstates the ALJ's duty to develop the record. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (cleaned up). Given that the ALJ had over one thousand pages of Plaintiff's medical record and multiple opinions from both treating and examining doctors, Plaintiff has not shown that this duty was triggered.

    5.  *Claire Pastor, M.D.*

Dr. Pastor issued opinions in November 2021, February 2022, and October 2023. AR at 29-30. She opined that low-level social interactions cause Plaintiff emotional dysregulation, decreased self-care, rocking, irritability, fatigue, and reduced executive functioning. *Id.* at 1472. The ALJ considered the opinion of Dr. Pastor and discounted it as unsupported by her longitudinal treatment records and inconsistent with the record as a whole. *Id.* at 29-30.

ORDER - 6

Plaintiff argues the ALJ erred in discounting the opinion of Dr. Pastor because she asserted that her opinion was supported by charts and notes. (Dkt. # 13 at 14.) This argument fails to engage with the ALJ's reasoning, which found Dr. Pastor's opinion to be both unsupported and inconsistent with the record. AR at 29-30 (citing *id.* at 1316, 1324, 1345, 1404, 1408, 1410, 1461-67, 1470-71, 1612). It is not this Court's job to "manufacture arguments where none is presented." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Accordingly, the ALJ did not err in discounting the opinion of Dr. Pastor.

### B.     The ALJ Did Not Err in Evaluating Plaintiff's Testimony

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). That said, the ALJ is not required to believe every allegation, nor to analyze testimony line by line. *See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At his first hearing Plaintiff testified that he did well at his job in New York but struggled after moving offices. AR at 81. His work situation caused anxiety, depression, headaches, and difficulty sleeping. *Id.* at 82. Since leaving work his symptoms have continued to worsen. *Id.* He left his job after becoming overwhelmed by mental health symptoms which were exacerbated by his manager's treatment. *Id.* at 85-86. He used to socialize at temple but only goes every two weeks since leaving his former employment. *Id.* at 84-85. Since leaving his job he reaches a "boiling point" of his symptoms more easily and feels he just need to be by himself alone in a room. *Id.* at 87.

At his second hearing, Plaintiff testified that he can only do any activity for 20-30 minutes and then needs two to three hours to recover. AR at 117. During the recovery period he only has energy to go to the restroom. *Id.* He meets with a therapist for two hours at a time twice a week. *Id.* at 122. He needs earplugs to handle sensory overwhelm, but even with earplugs he has migraines. *Id.* at 117-18. He needs to urinate 40-50 times a day. *Id.* at 118-19. He cannot "take much of a conversation before [he] just withdraw[s] into [his] own space." *Id.* at 120. He only spends 20 minutes a day with his wife and 30 minutes with his children before he breaks down crying because of sensory overwhelm. *Id.* at 121. His wife handles all activities of daily living. *Id.* at 121-22.

The ALJ considered Plaintiff's testimony and discounted it as contradicted by the medical record, including poor compliance with medical recommendations, his self-reports, and his activities of daily living as well as situational stressors which exacerbated symptoms. AR at 25-26. Plaintiff argues the ALJ erred in evaluating his subjective symptom testimony because none of the cited evidence shows an ability to work full time. (Dkt. # 13 at 11.) But an ALJ may reject a plaintiff's testimony based upon daily activities that either contradict his testimony or meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff has not shown error in the ALJ's finding that his daily activities contradicted his testimony.

The ALJ reasonably discounted Plaintiff's subjective symptom testimony as it conflicted with other evidence in the record, including poor compliance with medical recommendations. AR at 25. For example, Plaintiff testified that he experienced extremely frequent urination. The ALJ noted that Plaintiff's urologist opined that Plaintiff's bladder overactivity was likely due to bladder irritants and encouraged him to stop both caffeine and cannabis consumption. *Id.* at 21

ORDER - 8

(citing *id.* at 1336). Similarly, when Plaintiff presented to his doctor with difficulty sleeping, the doctor advised him to reduce consumption of coffee and cannabis. *Id.* at 1600. Indeed, doctors repeatedly urged Plaintiff to cut down on his coffee and cannabis consumption as potentially contributing to both his physical and mental health symptoms. *See, e.g., id.* at 875 ("[W]e counseled patient that he should minimize this [large coffee and fluid consumption] to improve his urinary symptoms."), 926 ("For mood: . . . Recommend to cut down on coffee and cannabis use."), 1054-55 ("Treatment recommendations and plan: . . . 4. Decreased coffee intake (target; anxiety, insomnia)."), 1057 (same), 1070 (same), 1073 (same), 1094 (same), 1098 (same), 1598 ("recommend cut down on coffee and cannabis use."). Nonetheless, Plaintiff continued to consume both coffee and cannabis daily. *See, e.g., id.* at 674-75. Despite ongoing difficulties, Plaintiff repeatedly told providers he felt his medications were "working well enough" and expressed a desire to keep medication and dosages the same. *Id.* at 757, 1408, 1448, 1450, 1460.

Plaintiff also endorsed difficulty interacting with others appropriately and spending more than 30 minutes doing any activity during the relevant period. AR at 87, 117. Contradictory to this testimony, the ALJ cited evidence that in appointments Plaintiff was engaged with providers, had normal speech, and did not otherwise outwardly indicate difficulty even in lengthy appointments. *Id.* at 25 (citing *id.* at 673-675 ( "Orientation: Alert and oriented x 3 Attention/Concentration: Attentive" during one-hour appointment), 926 ("Orientation: person, place, time and situation[.] Attention/concentration: alert and attentive"), 1033 ("Behavior/Activity: calm and feeling hopeful about the system they have created . . . Attention/concentration: attentive throughout the phone session"), 1247 ("The cognitive exam reveals an alert and oriented individual. His memory is intact. There is no evidence of a cognitive deficit."), 1302 ("Alert and oriented, speech fluid and clear, conversant, remote and recent

memory intact."), 1312 (same), 1345 ("Engaged and good eye contact . . . attends to conversation"), 1404 ("Appearance: appropriate, Behavior: engaged, speech: clear, Mood: depressed, stressed, Affect: appropriate, Thought Process: Normal, Attention: attentive"), 1430 ("Alert and Oriented X4"), 1451 ("Thought Process: Normal, Attention: attentive"), 1457 ("Behavior: engaged, Speech: clear, Mood: anxious, Affect: appropriate, Thought Process: Normal, Attention: attentive").

The ALJ noted that Plaintiff "began mild rocking and fidgety behavior when he presented to request a letter for his disability case in mid-2023, which worsened in recent months as his situational conflict stressors increased." AR at 26 (citing *id.* at 1454-55). The ALJ acknowledged limitations, largely related to stress, and accounted for those limitations in the RFC by limiting Plaintiff to simple, routine, tasks, and only occasional interaction with supervisors and no interactions with the public. *Id.* at 21, 26.

Given these valid reasons for discounting Plaintiff's testimony, the ALJ's use of additional reasons to discount his testimony is at most harmless error. *See Carmickle v. Comm'r Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (reasoning that error in relying on improper reasons to discredit claimant testimony was harmless because substantial evidence supported the ALJ's reasoning and credibility determination). While the Plaintiff may prefer a different interpretation of the evidence, that does not indicate that the ALJ erred.

### C. The ALJ Did Not Err in Evaluating Lay Witness Evidence

The testimony of Plaintiff's wife, E.F., does not differ significantly from Plaintiff's. Accordingly, the ALJ's reasoning regarding Plaintiff's testimony applied with equal force to E.F.'s testimony. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's]

ORDER - 10

own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony").

### D. The ALJ Did not Err in Determining Plaintiff's Age Category

Plaintiff argues that the ALJ erred in finding that Plaintiff was a "younger individual" rather than "closely approaching advanced age" as Plaintiff was 49 at the time of the hearing. (Dkt. # 13 at 18.) While an ALJ *may* use an older age category when a claimant is nearing a cut-off, "an ALJ is not required to use an older age category, even if the claimant is within a few days or a few months of reaching an older age category." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). As Plaintiff was under 50 at the time of the hearing the ALJ appropriately determined that he was a younger individual. *See* 20 C.F.R. § 404.1563(c)–(e).

### E. New Evidence

Plaintiff argues that the Court should remand this case for the ALJ to consider new evidence regarding his depression, anxiety, and autism spectrum disorder. (Dkt. ## 12, 16.) Specifically, a 2024 opinion from Dr. Pastor, Dr. Pastor's patient notes from after the hearing, and two 2025 opinions and one report from Dr. Braverman. (Dkt. # 16 at 5.) The Commissioner argues that the motion should be denied because Plaintiff violated this Court's scheduling order, has not shown that the new evidence is material, and has not shown good cause for failure to submit the records earlier. (Dkt. # 20.)

In social security disability cases, "a reviewing court may remand a case for the Commissioner to review new evidence 'upon a showing that [the new evidence] . . . is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Smith v. Berryhill*, 763 F. App'x 623, 626-27 (9th Cir. 2019) (quoting 42 U.S.C.

ORDER - 11

§ 405(g)). "To be material under section 405(g), the new evidence must bear directly and substantially on the matter in dispute and the claimant must additionally demonstrate that there is a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." *Id.* (cleaned up).

The opinions Plaintiff requests the Court to consider were issued over a year after his second hearing with the ALJ and over a year after his date last insured. Even if Plaintiff could establish good cause for failure to submit this evidence earlier, there is no reasonable probability that the evidence would have changed the ALJ's decision. The ALJ found depression, anxiety, and autism spectrum disorder to be severe impairments and accounted for limitations related to those impairments in the RFC. Furthermore, Dr. Pastor's December 2024 opinion does not differ significantly from her three other opinions which the ALJ considered. *Compare, e.g.*, AR at 1472 ("In the case of my patient [Plaintiff], the daily pressures of concealing his autistic traits and engaging in low-level social interactions have been major contributors to his experiences of autistic burnout. These pressures have led to a cascade of debilitating symptoms") *with* dkt. # 12-2 at 1 ("Managing both expectations and the noise of society in addition to suppressing autistic behaviors . . . for social functioning increases both fatigue and anxiety.").

Similarly, Dr. Braverman evaluated Plaintiff in February 2025, amended in April 2025, and opined that Plaintiff was "markedly impaired in his ability to function outside the home: significantly impaired in his ability to function in the home, markedly impaired in his ability to deal with stress, deal with interpersonal stress, maintain energy levels, and persist at tasks." (Dkt # 12-3 at 6.) Dr. Pastor and Dr. Means, whose opinions the ALJ considered, opined that Plaintiff was limited in his ability to handle stress, which the ALJ accounted for in the RFC. AR at 26, 560. Further, Plaintiff fails to demonstrate how this opinion, issued over a year after his date last

ORDER - 12

insured, relates to his functioning during the relevant period. The new evidence further demonstrates that Plaintiff suffered from severe mental impairments, including after the date last insured, but does not provide any new information during the relevant period that the ALJ should have considered. This new evidence, therefore, had no probability of changing the outcome of the administrative hearing, and does not require remand. Accordingly, Plaintiff's motion to supplement the record is denied.

V.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice. Plaintiff's motion to supplement the record (dkt. ## 12, 16) is DENIED.

Dated this 14th day of August, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge